JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, attorney Leonard Carr ("Leonard"), appeals the trial court's decision to disqualify him, attorney L. Bryan Carr ("Bryan"), and their law firm, Leonard F. Carr Co., L.P.A. ("the firm"), as attorneys. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} Leonard and Bryan are shareholders of appellee, Acacia Country Club Co. ("Acacia"). On September 11, 2007, Leonard filed a shareholder derivative action against Acacia and against Joseph Aveni and his company, Acacia Development Co. Ltd. (collectively "Aveni"), regarding a 2005 real estate transaction between Acacia and Aveni. Leonard brought this suit pro se with co-counsel L. Bryan Carr.
 {¶ 3} On October 9, 2007, Leonard filed a first amended complaint alleging that Acacia transferred two acres of real estate greater than the amount approved by the shareholders; that Acacia, without authorization, granted easements along Acacia's perimeter; that Acacia, without permission, spent $500,000 in transactional expenses; and that Acacia violated Acacia's Shareholders' Resolution.
 {¶ 4} On February 11, 2008, Acacia filed a motion to disqualify "Leonard Carr and the law firm of Leonard F. Carr Co., L.P.A." On March 21, 2008, Aveni filed a "motion to disqualify Brian [sic] Carr and Members of the Carr Law Firm." Both Leonard and Bryan filed briefs in opposition. *Page 4 
 {¶ 5} On March 27, 2008, the trial court held a hearing on the motions to disqualify counsel. Acacia requested that the proceedings be held in camera and that the record be sealed. On April 2, 2008, the trial court granted the motions to disqualify Leonard and Bryan.
 {¶ 6} The facts that gave rise to this appeal began on August 19, 2005 after the conclusion of a real estate transaction between Acacia and Aveni. Because of the sale, Acacia's golf course driving range had to be shortened. Acacia planned to install new poles and netting to contain stray golf balls on its property, but the city of Lyndhurst ("the city") denied Acacia's request for a permit.
 {¶ 7} In April 2007, Acacia's president, Jerry Kish, hired Leonard to research the permit dispute with the city. According to President Kish, Leonard asked him many questions about the land sale with Aveni. For instance, Leonard asked what Aveni had paid Acacia for the land, what land Aveni received, and whether Acacia planned to ask for more money from Aveni. President Kish claimed that he gave Leonard confidential information in response to the attorney's many questions.
 {¶ 8} On May 1, 2007, Leonard provided President Kish with a legal opinion based upon his research of the permit issue. According to Leonard's written legal opinion, the "genesis" of the permit dispute was the 2005 land sale to Mr. Aveni (the same sale that led to this shareholder derivative suit). *Page 5 
 {¶ 9} A few days later, on May 11, 2007, Leonard sent a letter to President Kish regarding potential claims against Acacia as a result of the Aveni land sale. He advised Acacia to obtain independent counsel and research the potential claims, which included that Acacia transferred more land than had been approved by the shareholders; that Acacia, without authorization, granted easements along Acacia's perimeter; and that Acacia, without permission, spent $500,000 in transactional expenses.
 Review and Analysis {¶ 10} Leonard brings this appeal, asserting two assignments of error for our review.
 Disqualification of Leonard F. Carr {¶ 11} "I. The trial court erred in disqualifying Attorney Leonard F. Carr."
 {¶ 12} Leonard argues that the trial court erred when it disqualified him as counsel. More specifically, he argues that his disqualification does not meet the requisite elements. This argument is without merit.
 {¶ 13} The trial court granted Acacia's motion to disqualify Leonard and the firm (which would include Bryan)[1] pursuant to the three-part test found in *Page 6 Dana Corp. v. Blue Cross Blue Shield Mut. (C.A.6, 1990), 900 F.2d 882,889. The trial court also granted Aveni's motion to disqualify Leonard and the firm because "Bryan Carr and Leonard Carr both have a substantial proprietary interest in the outcome of the litigation."
 {¶ 14} "The Ohio Supreme Court exercises exclusive jurisdiction over the admission of lawyers to practice law in Ohio and over the discipline of such lawyers." Horen v. Bd. of Edn., 174 Ohio App.3d 317, 322,2007-Ohio-6883, 882 N.E.2d 14, citing Mentor Lagoons, Inc. v. Rubin
(1987), 31 Ohio St.3d 256, 259, 510 N.E.2d 379.
 {¶ 15} Despite this exclusive jurisdiction, "lower courts have a duty to ensure that the attorneys who practice before it do not violate the disciplinary rules and those courts have the inherent power to disqualify an attorney from acting as counsel in a case where the attorney cannot or will not comply with the Code of Professional Responsibility and such action is necessary to protect the dignity and authority of the court." Horen, supra, citing Code of Judicial Conduct, Canon 3 B(3); Mentor Lagoons, supra at 259. *Page 7 
 Applicable Ohio Rules of Professional Conduct {¶ 16} Under Rule 1.13 of the Ohio Rules of Professional Conduct, "[a] lawyer employed or retained by an organization owes allegiance to the organization and not to any constituent or other person connected with the organization. The constituents of an organization include its owners and its duly authorized officers, directors, trustees, and employees."
 {¶ 17} Under Rule 1.9(a) of the Ohio Rules of Professional Conduct, "Unless the former client gives informed consent, confirmed in writing, a lawyer who has formerly represented a client in a matter shall notthereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." (Emphasis added.)
 Standard of Review: Disqualification of Counsel {¶ 18} In reviewing a trial court's decision to disqualify a party's counsel, we apply an abuse of discretion standard. 155 N. High v.Cincinnati Ins. Co., 72 Ohio St.3d 423, 426, 1995-Ohio-85,650 N.E.2d 869. An abuse of discretion implies that the trial court's attitude in reaching its decision is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 19} When ruling on a motion for disqualification, a trial court must consider a three-part test, which is known as the Dana test.Grilli v. Smith, *Page 8 
Fifth Dist. No. 07-CA-51, 2008-Ohio-3126, ¶ 56, citing Dana, supra. The trial court must determine whether "(1) A past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." Dana, supra at 889. Accordingly, we shall address each element of the test in turn.
 The Existence of a Past Attorney-Client Relationship {¶ 20} We find that there is a past attorney-client relationship between Leonard and Acacia. In his capacity as an attorney, Leonard represented Acacia when he agreed to research the permit issues. Further, it is clear that Acacia has not given informed consent in writing to allow Leonard to represent the shareholders in the present lawsuit.
 {¶ 21} Nevertheless, Leonard alleges that "Acacia did not believe it had an attorney-client relationship." First, we note that Leonard himself clearly thought there was such a relationship. Leonard's May 1, 2007 legal opinion contains the language "Attorney-Client Privilege" in bold capital letters in the caption. This language also informed Acacia and President Kish of such a relationship. It is disingenuous for Leonard to now argue that Acacia did not think such a relationship existed. *Page 9 
 {¶ 22} Leonard further alleges that President Kish's testimony, stating that he believed Leonard Carr "was a confidant and entrusted with valuable and confidential information[,] *** is laughable." While Leonard may think the testimony is not credible, the trial judge evidently believed President Kish. Under an abuse of discretion standard, such determinations are left to the discretion of the trial judge.
 Subject Matter/Substantially Related {¶ 23} Leonard argues that the subject matter between his representation of Acacia regarding the permit issues and the current case in which he represents the shareholders in the shareholder derivative suit are not substantially related. We find that the subject matters are substantially related.
 {¶ 24} Under Rule 1.0(n) of the Ohio Code of Professional Responsibility, "substantially related" "involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter."
 {¶ 25} In the legal opinion that Leonard wrote for President Kish, he informed the president that the Aveni sales transaction was the "genesis" for the permit problems. Similarly, the Aveni sale is also the genesis for the shareholder derivative suit. Clearly, both representations arise out of the same facts and circumstances. *Page 10 
 Confidential Information {¶ 26} Leonard argues that he did not acquire confidential information from Acacia during his initial representation regarding the permit. We disagree. "Where an attorney himself represented a client in matters substantially related to those embraced by a subsequent case he wishes to bring against the former client, he is irrebuttably presumed to have benefitted from confidential information relevant to the current case. In such limited situations there is no necessity to demonstrate actual exposure to specific confidences which would benefit the present client." Cleveland v. Cleveland Electric Illuminating Co. (1976), 440 F.Supp. 193, 210. Here, we have found that Leonard represented Acacia in matters substantially related to those in the present case; therefore, we presume he benefitted from confidential information.
 {¶ 27} Even if there was no presumption that Leonard obtained confidential information, the record is replete with instances that demonstrate he obtained such information. According to President Kish, he gave Leonard information about the real estate transaction with Aveni. For example, Leonard asked President Kish what Aveni had paid Acacia for the land, what land Aveni received, and whether Acacia planned to ask for more money from Aveni. This amounts to confidential information. We note that Leonard argues this information cannot be considered confidential because President Kish also gave some of this information to other people. We do not think that this would change *Page 11 
the confidential nature of the information. The information is confidential between Acacia and whomever Acacia told.
 {¶ 28} Having found that Leonard's disqualification meets the elements in the three-part test found in Dana supra, we now turn to Leonard's additional arguments.
 {¶ 29} Leonard argues that there must be a conflict of interest in order to disqualify an attorney. See Sayyah v. Cutrell (2001),143 Ohio App.3d 102, 108, 757 N.E.2d 779. More specifically, he alleges that this shareholder derivative suit is actually for the benefit of all shareholders and thus for Acacia's benefit, which makes him not adverse to Acacia. We disagree with this contention. Leonard is adverse to Acacia. He attempted to obtain Acacia's consent to bring the suit and, when he was denied consent, he filed the shareholder derivative suit. Further, our finding that all three elements under Dana supra, have been met demonstrates the existence of a conflict of interest.
 {¶ 30} Leonard also argues that Acacia's motion to disqualify was untimely. In Barberton Rescue Mission v. Hawthorn, Ninth Dist. No. CA21220, 2003-Ohio 1135, citing Sarbey v. National City Bank (1990),66 Ohio App.3d 18, 28, 583 N.E.2d 392, the court held that the time within which to raise an objection is promptly after the onset of litigation or within a reasonable time once all pertinent facts are known. *Page 12 
 {¶ 31} "The finding of a waiver is dependent on the circumstances of each case." Barberton Rescue Mission, supra. "Disqualification is such a drastic measure that it should be invoked if, and only if, the court is satisfied that real harm is likely to result from failing to invoke it." Id. citing Hayes v. Cent. States Orthopedic Specialists, Inc. (Okla. 2002), 51 P.3d 562, 565. Finally, the court in Barberton RescueMission, supra, evaluated the timeliness issue on the basis of an abuse of discretion.
 {¶ 32} Here, Leonard filed the case in September 2007, and appellees moved for disqualification in February and March 2008, which is a period of approximately five to six months. Applying the abuse of discretion standard, we find that the motions were timely filed. There was evidence that Acacia's counsel did not know about the conflict until February 2008, which is a sufficient basis for the trial judge to determine the motions were timely.
 {¶ 33} Finding all of Leonard's arguments unpersuasive, and based upon a review of the record, we find that the trial judge did not abuse his discretion in disqualifying Leonard Carr. Accordingly, Leonard Carr's first assignment of error is overruled.
 Disqualification of L. Bryan Carr {¶ 34} "II. The trial court erred in disqualifying Attorney L. Bryan Carr."
 {¶ 35} Leonard argues that the trial court erred in granting the motion to disqualify his co-counsel, Bryan. More specifically, he alleges that the trial court *Page 13 
erroneously relied on the fact that Bryan had a "substantial proprietary interest in the outcome of the litigation." This argument is without merit.
 {¶ 36} The trial court granted Acacia's motion to disqualify Leonard and The Carr Law Firm (which would include Bryan) pursuant to the three-part Dana test. The trial court also granted Aveni's motion to disqualify Leonard Carr and The Carr Law Firm because "Bryan Carr and Leonard Carr both have a substantial proprietary interest in the outcome of the litigation."
 {¶ 37} Under Rule 1.10 of the Ohio Rules of Professional Conduct, "[w]hile lawyers are associated in a firm, none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."
 {¶ 38} Based upon this rule, it is clear that, because Leonard is disqualified from this case, that disqualification should be imputed to Bryan, a member of the same firm. Imputation of disqualification forms a sufficient basis for the trial court's ruling.
 {¶ 39} Leonard also argues that Aveni did not have standing to move to disqualify Bryan. Clearly, Aveni had no standing to move to disqualify Bryan pursuant to the three-part Dana test because Aveni did not have a past *Page 14 
attorney-client relationship with either Leonard or Bryan. However, because we have found that the trial court appropriately granted Acacia's motion to disqualify Leonard and the members of his firm (which would include Bryan), Aveni's standing issue is irrelevant.
 {¶ 40} Additionally, Aveni did have standing to file the motion to disqualify because he did so based upon Rule 1.8(i) of the Ohio Rules of Professional Conduct, which states: "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client." In this case, the evidence demonstrates that Bryan has a proprietary interest in Acacia as a shareholder. As such, he shares in Acacia's assets and would share in proceeds if it were sold. Because of this proprietary interest, he cannot properly represent the other shareholders. Accordingly, we find that the trial court appropriately disqualified Bryan because of his proprietary interest.
 {¶ 41} Based upon a review of the record and the Ohio Rules of Professional Conduct, we cannot say that the trial judge clearly abused his discretion when he disqualified Bryan Carr. Accordingly, Leonard's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 15 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J.*, CONCURS; COLLEEN CONWAY COONEY, A.J., CONCURS IN JUDGMENT ONLY.
[1] We note that at oral argument, there was some discussion regarding whether Bryan technically worked for Leonard F. Carr Co., L.P.A. Leonard stated that Bryan has his own office and does not work for his firm; however, Leonard conceded that they often work on cases together. Also, it is clear from the record that Leonard and Bryan have the same business address. Accordingly, for all intents and purposes, and particularly under an abuse of discretion standard of review, Bryan and Leonard belong to the same firm.
* SITTING BY ASSIGNMENT: JUDGE JAMES D. SWEENEY, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS. *Page 1